NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 5 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MICHAEL L. PHILLIPS II,

Plaintiff - Appellant,

v.

FRANK BISIGNANO, Commissioner of
Social Security,

Defendant - Appellee.

No. 24-6711

D.C. No.
3:24-cv-05191-BAT

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Brian Tsuchida, Magistrate Judge, Presiding

Submitted November 3, 2025[**]
Portland, Oregon

Before: M. SMITH, NGUYEN, and H.A. THOMAS, Circuit Judges.

Michael Phillips appeals from the district court's judgment affirming

Commissioner of Social Security Frank Bisignano's ("Commissioner") denial of

disability insurance benefits ("DIB") and supplemental security income ("SSI")

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

under Titles II and XVI of the Social Security Act.  We have jurisdiction under 28 U.S.C. § 1291.  We review the district court's judgment de novo and the underlying decision of the Administrative Law Judge ("ALJ") for substantial evidence, *see Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022), and affirm.

1.  The ALJ did not err in failing to reopen Phillips's prior application. While 42 U.S.C. § 405(g) provides for judicial review of a Commissioner's "final decision," a decision not to reopen a claim is "not considered a 'final' decision within the meaning of § 405(g)," because such a decision is "purely discretionary." *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985).  An exception applies "to any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination."  *Klemm v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Udd v. Massanari,* 245 F.3d 1096, 1099 (9th Cir. 2001)).  "If a claimant provides a facially legitimate reason that constitutes 'good cause' under the Commissioner's regulations [under] 20 C.F.R. § 404.911(b), then due process requires that the ALJ address it."  *Dexter v. Colvin*, 731 F.3d 977, 981–82 (9th Cir. 2013) (footnote omitted).

Here, however, Phillips did not raise a regulatory reason listed under 20 C.F.R. § 404.911(b) and did not explicitly argue a due process claim or explain

why there would be a due process issue. As such, the ALJ did not err in failing to reopen Phillips's prior application.

2. The ALJ did not err in evaluating the medical evidence because he provided specific, cogent reasons related to the lack of "consistency" and "supportability" of the rejected evidence. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b); *see Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). For example, the ALJ questioned the supportability of Eastman's 2016 report for Phillips's 2018 SSI claim since it covered a time period outside the period for which Phillips was claiming SSI benefits. The ALJ also explained that Dr. Wingate's opinion of Phillips's limitations with physical activities, communication, and maintaining professionalism was inconsistent with Phillips's "demonstrated activities," such as performing "yard work," "exercising at the gym," and "socializing with others." The ALJ's skepticism of the accuracy of Phillips's disability test result is further supported by Dr. Wingate's own opinion that Phillips's score on the Rey 15-Item Test "suggested possible malingering" and that his Beck Depression Inventory report "indicated possible negative symptom exaggeration."

Additionally, the ALJ explained that Dr. Jaura's and Dr. Fernandez's reports of Phillips's physical limitations of climbing and "concentrated exposure to

3

24-6711

extreme cold, vibration, and hazards" were inconsistent with his "ability to walk or ride his bicycle to get around" and medical evidence of Phillips's "intact gait" and "neurological functioning of the extremities." The ALJ also found Marshall's opinions regarding Phillips's mental health symptoms inconsistent with records showing that Phillips "improved and stabilized with treatment and stable housing." Therefore, the ALJ properly evaluated the medical evidence.

3. The ALJ did not err in rejecting Phillips's testimony because the ALJ showed evidence of symptom exaggerations and provided clear and convincing inconsistencies between Phillips's testimony and the record. To determine whether a claimant's symptom testimony must be credited, this court first asks whether the claimant has presented objective medical evidence that "could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the claimant satisfies the first step *and* there is no evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting Claimant's subjective symptom testimony. *Id.*

Phillips contends that under *Brown-Hunter*, the ALJ misapplied the objective evidence test. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (amended opinion). But *Brown-Hunter* is inapplicable because it relates to what the "clear and convincing" standard is when "an ALJ concludes that a

claimant is not malingering." *Id.* at 492–93. Unlike the ALJ in *Brown-Hunter*, the ALJ here concluded that the claimant was malingering. And evidence of malingering is sufficient to support a negative credibility finding, relieving the ALJ's burden of providing specific, clear, and convincing reasons to discount a claimant's testimony. *Benton v. Barnhart*, 331 F.3d 1030, 1040–41 (9th Cir. 2003).

Furthermore, the ALJ had other "specific reasons" for his conclusion. For example, the ALJ based his conclusion that Phillips "inflated his mental health symptoms and functional limitations" on Dr. Wingate's opinion that the Beck Depression Inventory results indicated possible "negative symptom exaggeration." Since ALJs may question a claimant's credibility based on treatment records of exaggeration, the ALJ here did not misapply the objective evidence test. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (noting evidence of Claimant's "tendency to exaggerate" as a valid basis to discount Claimant's claims).

Additionally, the ALJ provided specific, clear, and convincing reasons that Phillips's testimony was inconsistent with the record. For example, the ALJ reasoned that while Phillips claimed an inability "to prepare meals at home," evidence showed him "cooking." The ALJ also noted that while Phillips testified that he had been "relying on a cane when walking," evidence showed him

5                                                    24-6711

consistently walking "without an assistive device." Phillips also testified at the 2020 hearing that he struggled with "visual hallucinations and suicidal thoughts," but "denied experiencing hallucinations and suicidal thoughts during his mental health treatment visits." Therefore, the ALJ properly rejected Phillips's testimony for its inconsistency with the record.

4. The ALJ did not err in discrediting Price's lay testimony because Price's testimony conflicted with the medical evidence. The ALJ articulated that Price's testimony is "not consistent" with Phillips's "normal physical examination findings and lack of treatment." The ALJ further articulated that Price's testimony regarding Phillips's mental health issue was "not consistent" with the improvement Phillips experienced with his mental health treatment, supporting this reasoning with substantial evidence. Because "one reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence," the ALJ here properly discredited Price's testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984)).

5. The ALJ did not err in determining Phillips's RFC because the determination was reasonably supported by evidence. For example, the ALJ supported his finding that Phillips "can perform routine, predictable tasks" with Dr. Wingate's, Dr. Renn's, and Dr. Jaura's evaluations, which, among other things, noted that he could "bathe himself," "dress himself," and "vacuum, and mop." The

ALJ supported his finding that Phillips "can work in an environment free of fast-paced production requirements" with evidence of Phillips's successful work history and his ability to "tolerate some level of social interaction in the workplace." The ALJ also supported his finding that Phillips "can have occasional interaction with co-workers and the general public" with evidence of Phillips "using public transportation," "shopping," "attending new puppy classes at PetSmart," "pursuing college classes," "caregiving for a friend's mother," and engaging with medical professionals in a "pleasant and cooperative manner." Therefore, because the ALJ's RFC determinations were reasonably supported by evidence, the ALJ did not err in determining Phillips's RFCs.

**AFFIRMED.**